UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEADFAST INSURANCE
COMPANY, as assignee and
subrogee of NORDIC PCL
CONSTRUCTION, INC.,

           Plaintiff,

v.                                    Case No.: 8:17-cv-02290-EAK-CPT

IGD HOSPITALITY, INC.,

           Defendant.

_____

## ORDER

    Steadfast Insurance Company ("**Plaintiff**") initiated this action in the Middle District of Florida. *See* (Doc. 1). IGD Hospitality, Inc. ("**Defendant**") contends that the appropriate venue lies, instead, in the District of Hawaii. Defendant's Motion to Transfer Venue and Showing of Cause ("**Motion**"), (Doc. 18), is now before the Court. Plaintiff responded in opposition ("**Response**"). (Doc. 21). The Motion is **DENIED**.

## I.    Factual Background

    Nordic PCL Construction, Inc. ("**Nordic**") served as the general contractor of a construction project referred to as the Maui Hyatt Residence Club in Lahaina, Maui, Hawaii ("**Project**"). (Doc. 6, at ¶ 6). Plaintiff issued a Subguard Policy to Nordic ("**Policy**"), under which Plaintiff agreed to provide Nordic with coverage for certain losses that resulted from a subcontractor's default. *See id.* at ¶ 13; (Doc. 21, at 1).

Nordic entered into a subcontract with Defendant for the Project, by which Defendant agreed to "paint and furnish and install flooring . . . ." ("**Subcontract**") (Doc. 6, at ¶ 7, Ex. A). The parties to this action do not dispute the Subcontract's validity.

In September of 2014, Nordic sent a default notice to Defendant due to Defendant's alleged failure to "provide sufficient supervision, skilled manpower, materials, tools, and equipment [for] the Project." *Id.* at ¶ 8. Defendant allegedly failed to cure this default and abandoned the Project in early October of 2014. *Id.* at ¶¶ 9–10. Consequently, according to Plaintiff, Nordic incurred over $9 million in damages.[1] *Id.* at ¶ 11. Nordic thereafter made a claim under the Policy and Plaintiff paid the claim. *Id.* at ¶¶ 14–15. Significantly, Nordic transferred its rights of recovery and claims against Defendant—to the extent of Plaintiff's payments—to Plaintiff and assigned to Plaintiff "all rights, actions, and causes of action" regarding Defendant's alleged breach and default of the Subcontract with Nordic. *Id.* at ¶¶ 16–17. As Nordic's subrogee and assignee, Plaintiff seeks recovery of the incurred damages through its amended complaint ("**Amended Complaint**"). *Id.* at ¶ 17.

Defendant filed a motion to dismiss in response to the Amended Complaint, seeking to dismiss the Amended Complaint "in its entirety pursuant to the doctrine of forum non conveniens." (Doc. 11, at ¶ 2). The Court denied Defendant's motion to

---

[1] The Court notes that the Subcontract provides that Nordic was to pay Defendant $5,312,423.00 in consideration of Defendant's performance of the Subcontract and the Subcontract's work, as described therein, subject to the Subcontract's terms and conditions. (Doc. 6, at Ex. A). The "Release and Assignment" executed by Nordic provides, however, that Plaintiff reimbursed Nordic for "substantial losses in an amount of $9,772,302.08" pursuant to the Policy. *Id.* at Ex. B.

dismiss but, because several legal and factual assertions in the motion to dismiss raised the question of whether the matter should be resolved by the District of Hawaii, the Court ordered the parties to show cause as to why the action should not be transferred to the District of Hawaii. (Doc. 15). Defendant's Motion followed, through which Defendant moves to transfer the action to the District of Hawaii. (Doc. 18). Plaintiff counters that the Court should retain the action. (Doc. 19).

Plaintiff is a Delaware corporation with a principal place of business in Illinois. (Doc. 6, at ¶ 2). According to the Amended Complaint, Plaintiff "operates as a qualified surplus lines insurer in Florida." *Id.* Defendant, on the other hand, is a Florida corporation with its principal place of business in Tampa, Florida. *Id.* at ¶ 4.

## II.   Analysis

In reviewing a motion to transfer venue, the Court is guided by 28 U.S.C. § 1404(a). *See Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000) ("A motion to transfer venue is governed by 28 U.S.C. § 1404(a)."). Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

3

Case No.: 8:17-cv-02290-EAK-CPT

A district court must engage in a two-step analysis in assessing whether to transfer a case pursuant to section 1404(a). *See Eye Care Int'l, Inc.*, 119 F. Supp. 2d at 1318. First, the court must analyze whether the case could have been brought in the transferee court. *See* 28 U.S.C. § 1404(a); *Ali v. Hudson Ins. Co.*, No. 3:15-cv-816-J-34PDB, 2016 WL 1090018, at *2 (M.D. Fla. Mar. 21, 2016). Next, the Court must analyze "whether the transfer would be for the convenience of the parties and witnesses and in the interests of justice."[2] *Id.* (citing *Eye Care Int'l., Inc.*, 119 F. Supp. 2d at 1318). Thus, the inquiry into whether the action could have been brought in the District of Hawaii is separate from the inquiry into whether the action should be transferred to the District of Hawaii.

### a.   *Whether the Action Could Have Been Brought in the District of Hawaii*

"An action might have been brought in a proposed transferee court if: (1) the court had jurisdiction over the subject matter of the action, (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court." *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011) (internal quotations omitted) (citing *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985)). *See also Kelling v. Hartford Life and Accident Ins. Co.*, 961 F. Supp. 2d 1216, 1219 (M.D. Fla. 2013); *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, No. 6:12-cv-1864-Orl-22GJK, 2013 WL 12096515, at *2 (M.D. Fla. Mar. 11, 2013); *NPX*

---

[2] Although section 1404(a) provides that a district court may transfer any civil action to a division or district to which the parties have consented, the parties here have not consented to transferring the action to the District of Hawaii.

Case No.: 8:17-cv-02290-EAK-CPT

*B.V. v. Research in Motion Ltd.*, No. 6:12-cv-498-Orl-22TBS, 2012 WL 12905816, at *2 (M.D. Fla. Nov. 28, 2012).

### i.  Subject Matter Jurisdiction

Turning to the first prong of this inquiry, the District of Hawaii would have jurisdiction over the subject matter of the action. In initiating this action, Plaintiff invoked diversity jurisdiction to establish this Court's subject matter jurisdiction. Defendant argues in the Motion that the District of Hawaii would have subject matter jurisdiction over this action because diversity jurisdiction would also exist there. *See* (Doc. 18, at 3). Plaintiff does not address whether the District of Hawaii would have subject matter jurisdiction over this action in its Response.

District courts have original jurisdiction over all civil actions in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Furthermore, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business," except as otherwise provided in the section. *Id.* § 1332(c)(1). "Principal place of business" refers to the corporation's "nerve center," which is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). In practice, such location is often the corporation's headquarters. *Id.* at 93. For diversity jurisdiction to exist under 28 U.S.C. § 1332, each plaintiff must be diverse from each

defendant. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978) ("Congress has established the basic rule that diversity jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship.").

Based on the allegations in the Amended Complaint, the District of Hawaii would have subject matter jurisdiction over this action. According to the Amended Complaint, Plaintiff is a Delaware corporation, which has its principal place of business in Illinois. Plaintiff is accordingly a citizen of Delaware and Illinois.[3] As a Florida corporation with its principal place of business in Tampa, Florida, Defendant is a citizen of Florida. Diversity of citizenship therefore exists among the parties. Additionally, the amount in controversy exceeds $75,000 because Plaintiff seeks over $9 million in damages. The record does not contain any indication that, for some reason unbeknownst to the Court, the parties' citizenship or the amount in controversy would differ if Plaintiff had initiated this action in the District of Hawaii. Accordingly, the District of Hawaii would have subject matter jurisdiction over this action.

### ii. *Venue*

Next, for purposes of determining whether the action could have been brought in the District of Hawaii, venue is proper in that district. Except as otherwise provided

---

[3] Defendant's Motion states that "Defendant maintained its physical office in Maui, Hawaii," but fails to describe further either the operations or the purpose of such "physical office." (Doc. 18, at 4). Furthermore, Plaintiff's Response states that Defendant "applied for a certificate of authority for a foreign corporation in Hawaii in 2010, [but] it is no longer in good standing in the [S]tate due to a failure to submit annual filings." (Doc. 21, at 6). In the absence of any clarification or further explanation from the parties, the Court declines to read further into, or freely speculate about, undeveloped factual assertions.

Case No.: 8:17-cv-02290-EAK-CPT

by law, 28 U.S.C. § 1391 governs the venue for civil actions brought in district courts.

28 U.S.C. § 1391(a)(1). A civil action may be brought in

> (1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* § 1391(b). Furthermore, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to" the applicable civil action. *Id.* § 1391(c)(2). Section 1391(b)(1) is inapplicable for determining whether venue is proper in the District of Hawaii, as Defendant resides in Florida. Similarly, as there as at least one district—the Middle District of Florida—in which this action may be brought as provided above, section 1391(b)(3) is inapplicable for purposes of this analysis. Thus, the Court is guided by section 1391(b)(2).

In evaluating the propriety of venue under section 1391(b)(2), "[o]nly the events that directly give rise to a claim are relevant" and the focus is on "only those acts and omissions that have a close nexus to the wrong." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003). Those acts or omissions having a sufficiently close

nexus to the wrong to constitute "giving rise to a claim" in a breach of contract action include "where the contract was intended to be performed, and where the contract was breached." *Anthony Sterling, M.D. v. Provident Life and Accident Ins. Co.,* 519 F. Supp. 2d 1195, 1205 (M.D. Fla. 2007) (citing *Jenkins Brick Co.*, 321 F.3d at 1372).

In its Motion, Defendant points out that "the contracts and sub-contracts were entered into" in the District of Hawaii," the Project is located in the District of Hawaii, and the alleged breach occurred in the District of Hawaii. (Doc. 18, at 3). Plaintiff does not directly respond to whether venue is proper for purposes of evaluating whether this action could have been brought in the District of Hawaii, but argues that neither party has any connection to Hawaii insofar as Plaintiff's claims are concerned. (Doc. 21, at 6–7). Specifically, Plaintiff asserts that Defendant "appears to have no current ties to Hawaii" and emphasizes that "unnamed, unspecified nonparties that [Defendant] claims it intends to file suit against" are "the only entities with alleged current ties" to the District of Hawaii. *Id.* (emphasis removed).

Defendant's arguments are well-taken. Pursuant to Subcontract, Defendant agreed to "paint and furnish and install flooring for the Project," which was located in the District of Hawaii. (Doc. 6, at ¶ 7). The Subcontract was thus intended to be performed in the District of Hawaii. Defendant allegedly breached the Subcontract in the District of Hawaii, as well. As detailed in the Amended Complaint, Defendant allegedly failed to supply "sufficient supervision, skilled manpower, materials, tools, and equipment for the Project," leading Nordic to send a default notice to Defendant.

*Id.* at ¶ 8. Defendant subsequently failed to cure its default and, in October of 2014, abandoned the Project. Not only do such actions or omissions have a close nexus to the wrong, but they constitute the alleged wrong. Thus, "a substantial part of the events or omissions giving rising to" Plaintiff's claims occurred in the District of Hawaii. 28 U.S.C. § 1391(b)(2). Even if Plaintiff finds this argument unavailing, "a substantial part of the property that is subject to the action" is located in the District of Hawaii. *Id.* Accordingly, for purposes of determining whether the action could have been brought in the District of Hawaii, venue is proper in the District of Hawaii.

### iii.  *Amenable to Process*

Finally, the third prong under the analysis for determining if the action could have been brought in a transferee court is whether the defendant is amenable to process issuing out of the transferee court. Defendant avers that, by filing its Motion, it is amenable to process issuing out of the District of Hawaii. Plaintiff does not dispute this argument. The Court is not convinced that Defendant's mere filing of the Motion is sufficient to establish its amenability to service of process issuing out of the District of Hawaii. *See, e.g., Kelling*, 961 F. Supp. 2d at 1219 (explaining that the defendant was amenable to process in the Western District of Wisconsin because it conducted business activities in that district and had been hailed into that district on prior occasions); *Brown v. Travelers Indem. Co.*, No. 8:08-cv-168-T-27MSS, 2008 WL 11336149, at *1 (M.D. Fla. Apr. 24, 2008) (finding that the defendant "would be amenable to service of process in [the Eastern District of] Michigan, and venue would

be proper in the Eastern District of Michigan" because the defendant "represent[ed] that it transact[ed] business in Michigan and [was] therefore subject to personal jurisdiction in Michigan"); *Odem v. Centex Homes, Inc.*, No. 8:08-cv-166-T-27MAP, 2008 WL 11427941, at *1 (M.D. Fla. July 7, 2008) ("Plaintiff does not otherwise dispute that venue is proper in the Northern District of Texas and that Defendant is [amenable] to service of process in Texas, as Defendant's corporate headquarters is located in Dallas, Texas.").

However, assuming *arguendo* that Defendant has successfully demonstrated its amenability to service of process issuing out of the District of Hawaii, the Court nonetheless finds, as detailed more fully herein, that transfer is not warranted.

### b.   *The Convenience of the Parties and Witnesses and in the Interests of Justice*

Having analyzed whether Plaintiff *could* have brought the action in the District of Hawaii, the Court next turns to whether the action *should* be transferred to the District of Hawaii. For this part of the two-part inquiry, the Court must analyze "whether the transfer would be for the convenience of the parties and witnesses and in the interests of justice." *Ali*, 2016 WL 1090018, at *2 (citing *Eye Care Int'l., Inc.*, 119 F. Supp. 2d at 1318). The Eleventh Circuit Court of Appeals has recognized several factors for courts to consider in assessing whether transfer is appropriate:

> 1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to

> compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

No single factor is dispositive in determining whether transfer is appropriate, but some factors are afforded more weight than others. *Ali*, 2016 WL 1090018, at *2. The movant carries the burden of establishing that the proposed transfer is appropriate. *Kelling*, 961 F. Supp. 2d at 1218; *Am. Aircraft Sales Int', Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999). District courts have broad discretion in determining whether transferring venue under section 1404(a) is appropriate. *Eye Care Int'l, Inc.*, 119 F. Supp. 2d at 1317. Upon consideration of the relevant factors, transfer of this action to the District of Hawaii is unwarranted.

### i. *Convenience of the Witnesses*

The convenience of the witnesses is "[o]ne of the most important factors" for the Court's consideration. *Response Reward Sys., L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002). In analyzing this factor, the Court "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum," but instead "qualitatively evaluate[s] the materiality of the testimony that the witnesses may provide." *Projects Mgmt. Co.*, 2013 WL 12096515, at *2 (internal quotations omitted). Defendant baldly claims that "[t]he vast majority of witnesses will be located in Hawaii." (Doc. 18, at 4). Defendant

further posits that the action "will *likely* require deposing and calling *a number of witnesses* to attest to the alleged breach or lack thereof by Defendant" and traveling from Hawaii to Florida "would be inconvenient for *all* witnesses" in this action. *Id.* (emphasis added). Despite these assertions, Defendant fails to specifically identify any witnesses or provide information regarding the materiality of the testimony that any such witnesses may provide. The Motion omits a list of potential witnesses or affidavits from potential witnesses. To the extent that Defendant mentions possible witnesses in lawsuits that it *intends* to file, such discussion is unavailing.

Plaintiff adds that none of its representatives with knowledge of the action are located in Hawaii. According to the affidavit of Andrew Thompson, who resides in Tennessee and serves as the director and major case manager for Plaintiff's Subguard claims in the Untied States, all other personnel of Plaintiff who may be called as witnesses are located in Illinois. (Doc. 21–1, at ¶ 6). Similarly, the affidavit asserts that any personnel of Nordic who may be called as witnesses are located in Colorado. *Id.* at ¶ 11. Plaintiff accordingly concludes that "many of the individuals involved with the construction of the Project are no longer located in Hawaii." (Doc. 21, at 8).

Given Defendant's failure to identify any witnesses located in Hawaii and Plaintiff's assertions that all personnel of Plaintiff and Nordic who may be called as witnesses are located outside of Hawaii, this factor weighs in favor of retention. Moreover, as any potential witnesses from Plaintiff and Nordic are located outside of both Hawaii and Florida, those witnesses would have to travel to either Florida or

Case No.: 8:17-cv-02290-EAK-CPT

Hawaii if called upon in this action. For those personnel of Plaintiff located in Tennessee or Illinois, travel time to Florida is undoubtedly shorter than travel time to Hawaii. The same applies for those personnel of Nordic in Colorado. Although neither party addresses the possibility that personnel of Defendant may be called as witnesses, the Court highlights that Defendant's principal place of business is located in the Middle District of Florida. Because "substantial information about the importance or materiality" of potential witnesses' testimony was not provided to the Court, the Court affords less weight to this factor than if such information had been provided. *See Projects Mgmt. Co.*, 2013 WL 12096515, at *2. Nonetheless, this factor weighs in favor of retention.

### ii. *Location of Relevant Documents and Ease of Access to Sources of Proof*

"The significance of this factor is reduced because technological advancements in electronic document imaging and retrieval minimize the burden of document production." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010). Defendant's Motion fails to address the location of relevant documents and the relative ease of access to sources of proof. Defendant alleges in passing that it "maintained accounts at Hawaiian banks," but otherwise fails to discuss the location of, or ability to access, such records. Instead, all other references to the location of relevant documents and the access to sources of proof are contained in the context of the lawsuits that Defendant allegedly intends to file. Such discussion of unidentified records is unpersuasive. Plaintiff, on the other

hand, points out in its Response that "a vast majority of the documents" regarding Plaintiff's claims and the Project "generally were transmitted electronically or are located [outside of Hawaii]." (Doc. 21, at 7). Plaintiff further highlights, through Andrew Thompson's affidavit, that Plaintiff's records relating to the claims are electronically maintained or archived in Illinois. (Doc. 21–1, at ¶ 12).

Considering Andrew Thompson's affidavit and Defendant's failure to address the location of relevant documents and the relative ease of access to sources of proof in its Motion, Plaintiff's arguments on this factor are persuasive. Electronic maintenance of records would alleviate any need to transfer the action to Hawaii to facilitate access to records. To the extent that Plaintiff maintains physical records, such records are in Illinois and outside of Hawaii. This factor weighs in favor of retention.

### iii. Convenience of the Parties

The logical starting point for analyzing this factor is to consider the parties' residences. See Delorenzo v. HP Enter. Servs., LLC, 79 F. Supp. 1277, 1283 (M.D. Fla. 2015). "Where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain." Eye Care Int'l, Inc., 119 F. Supp. 2d at 1319. Plaintiff argues that transferring the action to Hawaii would be both inconvenient and prejudicial. Defendant is a Florida corporation with its principal place of business in Tampa, Florida. Thus, Defendant resides within this Court's jurisdiction. Although Defendant avers that it maintained "its physical office" in Maui, the meaning of such characterization is unclear. A transfer of this action to the District of Hawaii would

therefore move the action out of Defendant's own backyard to a judicial district located thousands of miles away. Plaintiff, on the other hand, is a Delaware corporation with its principal place of business in Illinois. Consequently, while Plaintiff must travel to either Florida or Hawaii, traveling to Hawaii would undoubtedly be more inconvenient. This factor thus weighs slightly in favor of retention.

### iv.  Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Nat'l Trust Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016) (internal quotations omitted). In analyzing the locus of operative facts, "the court must look at the site of events from which the claim arises." *Id.* (internal quotations omitted). In arguing why the action could have been brought in the District of Hawaii, Defendant asserts that "virtually all of the events giving rise to Plaintiff's claim occurred in Hawaii." (Doc. 18, at 3). Indeed, as discussed above, the Project is located in Hawaii, the Subcontract was intended to be performed in Hawaii, and Defendant's alleged breach of the Subcontract occurred in Hawaii. To the extent that Defendant relies on its purported intention to file future lawsuits to establish that Hawaii is the locus of operative facts, however, such reliance is unpersuasive. The Court recognizes that the Project has since been completed and Plaintiff initiated this action to recover damages as a result of Defendant's default. The Project's completion and Plaintiff's subsequent lawsuit

regarding Defendant's alleged default does not change the locus of operative facts, however, which is Hawaii. This factor accordingly weighs in favor of transfer.

### v. *Availability of Process*

Defendant only indirectly addresses this factor, asserting that "it would be inconvenient for all witnesses to travel from Hawaii to Florida to testify about a dispute solely arising in Hawaii." (Doc. 18, at 4). Defendant otherwise fails to explain how this factor weighs in favor of transfer. As Defendant fails to provide a list of witnesses or otherwise identify the witnesses who would testify, which witnesses would be unwilling to testify remains unaddressed, thereby also leaving as unaddressed the availability of process to compel the attendance of such unwilling witnesses. Plaintiff addresses this factor, however, correctly highlighting that potential witnesses and records can be subpoenaed under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 45. Rule 45(c)(1) sets limits on the reach of this subpoena power. Fed. R. Civ. 45(c)(1); *Ali*, 2016 WL 1090018, at *4 ("Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure generally prohibits compelling a witness to travel more than 100 miles to testify."). Because Defendant fails to identify any potential witnesses to this action and address the availability of process to compel the attendance of any unwilling witnesses, this factor is neutral.

Case No.: 8:17-cv-02290-EAK-CPT

### vi.   *Weight Accorded to Plaintiff's Choice of Forum*

The Eleventh Circuit Court of Appeals has instructed that a court should not disturb a plaintiff's choice of forum, unless the choice of forum "is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Relatedly, this Court emphasized in *Response Reward Systems, L.C. v. Meijer, Inc.* that a court must give "considerable weight to Plaintiff's choice of forum" in determining the propriety of the proposed transfer. 189 F. Supp. 2d at 1339. Nonetheless, "when the operative facts underlying the cause of action did not occur with the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Delorenzo*, 79 F. Supp. 3d at 1283. *See also Polyform A.G.P. Inc. v. Airlite Plastics Co.*, No. 4:10-cv-43, 2010 WL 4068603, at *7 (M.D. Ga. Oct. 15, 2010) ("[T]his factor is entitled to less deference when the operative facts are centered outside of this district and when the plaintiffs do not reside here or in close proximity to this district."). As previously discussed, the operative facts underlying this action occurred in Hawaii. Of course, this recognition simply results in the Court affording *less* deference to Plaintiff's choice of forum, rather than *no* deference. Therefore, although the Court affords less weight to this factor in light of the recognition that the operative facts underlying the action occurred in Hawaii, the factor nonetheless favors retention.

### vii.   *Trial Efficiency and the Interests of Justice*

Defendant tangentially addresses the interests of justice by focusing on public interest factors that Middle District of Florida courts have considered in determining

Case No.: 8:17-cv-02290-EAK-CPT

whether to transfer an action to a different venue. After reciting the various public interest factors, Defendant argues that retaining this action in the Middle District of Florida would "burden the imposition of jury duty on Florida residents with no interest in the controversy." (Doc. 18, at 5). Defendant also asserts that the citizens of Hawaii possess a greater interest in the action because the dispute is "wholly Hawaiian in nature and involving Hawaiian citizens and businesses." *Id.*

The Project, which was completed four years ago, is located in Hawaii, but relevant witnesses and records appear to be located outside of Hawaii. As repeatedly emphasized herein, Defendant's Motion omits discussion of, and reference to, specific, anticipated witnesses and their testimony. According to Plaintiff, any personnel of Plaintiff or Nordic who may be called as witnesses are located outside of Hawaii. Plaintiff's records regarding this action are either electronically maintained or archived out of Hawaii. Plaintiff, Defendant, and Nordic are each based in the continental United States, with Defendant's principal place of business located in Tampa, Florida. Describing this dispute as "wholly Hawaiian in nature and involving Hawaiian citizens and business" is thus inaccurate and unpersuasive. As Defendant otherwise fails to persuasively address trial efficiency and the interests of justice, this factor is neutral.

### viii.   Additional Factors

The Court has discussed only those factors explicitly disputed or addressed by the parties. The Court has considered the remaining factors—the relative means of the

parties and the familiarity of each forum with governing law[4]— and finds them to be neutral.

## III.   **Conclusion**

In light of the foregoing, and with the Court's broad discretion in mind, transferring the action to the District of Hawaii would not be for the convenience of parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a). Even assuming *arguendo* that Defendant has preliminarily established that the action could have been brought in the District of Hawaii, the Court's analysis of the relevant factors demonstrates that several factors favor this Court's retention of the action. Defendant has not satisfied its burden to demonstrate that the proposed transfer is appropriate. Accordingly, Defendant's Motion is due to be denied.

**(This Space Intentionally Left Blank)**

---

[4] Defendant briefly remarks that "the District Court of Hawaii is better suited to resolve a conflict involving Hawaiian law" than this Court. (Doc. 18, at 5). Defendant fails to provide any legal support or further factual support for this proposition, however. The Court contrasts this omission with cases in which the party requesting transfer fully briefed its position as to a forum's familiarity with governing law, the applicable law, or both. *See, e.g., Nat'l Trust Ins. Co.*, 223 F. Supp. 3d at 1244; *Delorenzo*, 79 F. Supp. 3d at 1281; *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1166–67 (S.D. Fla. 2017). The Court accordingly weighs this factor as neutral.

Case No.: 8:17-cv-02290-EAK-CPT

Accordingly,

It is **ORDERED AND ADJUDGED** that the Motion to Transfer Venue and Showing of Cause (Doc. 18) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 29ᵗʰ day of January, 2019.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record